UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CHARLES E. MARSALA                          CIVIL ACTION

v.                                          NO. 13-6800

JERRY L. MAYO, ET AL.                       SECTION "F"


ORDER AND REASONS

Before the Court is a motion to dismiss filed on behalf of Michael Gray, A&S Recovery, and SCIBMATT, LLC.  For the reasons that follow, the motion is GRANTED.

**Background**

The underlying facts of this case are more completely set forth in this Court's rulings on motions in prior, related litigation commenced in 2006.[1]  This case arises out of the same failed business venture.

In the late 1990s, Charles Marsala, his then-close friend, Jerry Mayo, and an acquaintance, Jay Lanners, joined together to invest in restaurant franchises through their company, Profitable Dining, LLC.  Marsala was the only one to invest $200,000 in capital for the venture. Facing financial difficulties, Mayo

---

[1]See Marsala v. Mayo, No. 06-3846, 2007 WL 3245434 (E.D. La. Nov. 2, 2007) and Order and Reasons dated June 12, 2013, Rec. Doc. 139 of Civil Action No. 06-3846, aff'd, 551 F. App'x 181 (5th Cir. 2014).

ultimately withdrew from the venture in 2001, leaving Marsala and Lanners as partners in Profitable Dining.  After the venture failed, Marsala sued Mayo, Lanners, and Profitable Dining on July 21, 2006.

Marsala alleged fraud, breach of fiduciary duty, and contribution; he also sought to recover from Profitable Dining a debt allegedly owed pursuant to a promissory note.[2]  After discovery, the defendants moved for summary judgment.[3]  On November 2, 2007, the Court granted in part and denied in part the motions; summary judgment was granted in Lanners' and Mayo's favor on all of Marsala's claims except: (1) the claim that Lanners and Mayo misrepresented their net worth to induce Marsala into signing personal guarantees, and (2) the claim that Lanners and Mayo breached their fiduciary duty to Marsala.[4]  Marsala v. Mayo, No. 06-3846, 2007 WL 3245434 (E.D. La. Nov. 2, 2007).

Just one month after the summary judgment ruling, the parties reached a settlement.  After receiving Mayo's sworn financial statement that his debts were greater than his assets, Marsala

---

[2]Among the claims presented by the 2006 litigation, Marsala alleged that Mayo and Lanners made pre-Operating Agreement misrepresentations, failed to capitalize Profitable Dining necessitating personal guarantees from Marsala, and failed to inform Marsala about the Profitable Dining loan to A&S Recovery.

[3]During the course of discovery, then-third-party witness Michael Gray was deposed by Marsala.

[4]The Court did not reach the merits of Lanners' counterclaim against Marsala to collect an alleged debt.

voluntarily dismissed his remaining claims against Mayo; thus, the Court dismissed the claims against Mayo without prejudice, "reserving plaintiff's right to reopen the case against Mr. Mayo in the event it is discovered that the sworn financial statement...is found to be inaccurate or there has been an unlawful transfer of assets during the course of this action."  Marsala, Lanners, and Profitable Dining jointly requested dismissal of all claims with prejudice; the Court granted the request on January 23, 2008.

More than five years later, Marsala moved to reopen the 2006 litigation against Mayo, Lanners, and Profitable Dining pursuant to Rule 60 of the Federal Rules of Civil Procedure, asserting that Lanners committed fraud on the Court by providing false statements in the "Statement of Uncontested Facts" with his motion for summary judgment and that Mayo gave Marsala an inaccurate financial statement that induced Marsala to dismiss his claims.  On June 12, 2013 the Court denied Marsala's motion to reopen as (among other things) untimely.  The Fifth Circuit affirmed the Court's ruling on the basis of untimeliness.  See Marsala v. Mayo, 551 F. App'x 181 (5th Cir. 2014)(per curiam).

On December 30, 2013 Marsala, *pro se*, filed this lawsuit against Mayo, Michael Gray, A&S Recovery, Jacksonville Dining Concepts, and SCIBMATT, LLC.  In a lengthy complaint that overlaps

with his 2006 lawsuit,[5] Marsala alleges that the $200,000 he invested in 1998 and the $250,000 he loaned in 2001 to Profitable Dining were transferred without his knowledge to SCIBMATT, LLC, A&S Recovery, "and other companies owned by Jerry Mayo, Mike Gray, and Jerry Gabet plus his funds ($65,000) directly paid to GE Finance in 2005 were used to pay for the FF&E in Jacksonville Dining Concepts' Copeland Restaurant."[6] Marsala purports to assert various claims, including claims for securities fraud, conspiracy, fraudulent concealment, unjust enrichment, and constructive trust. Many if not all of his allegations overlap with or derive from the 2006 litigation, "the Profitable Dining scheme"; he again charges that Lanners and Mayo deceived him and duped him into investing money in Profitable Dining, money which was then transferred to SCIBMATT and A&S Recovery.[7] Gray, A&S, and SCIBMATT[8] now seek dismissal of

---

[5]Marsala acknowledges the related nature of his 2006 case and this one.

[6]Marsala alleges:

> Marsala (Tulane '82), Dr. Clark Warden (Tulane '81), and Dr. Pete Avara were the victims of an Affinity Fraud-Ponzi Scheme, titled the "Jay and Jerry Business Plan", created by Mayo and Lanners, benefitting, and facilitated by Gabet and Gray; which relied on the Fraternal Brotherhood, trust, and on-going friendships between Lanners (LSU '83), Mayo (Tulane '79), Gray (Tulane '83), Warden, and Marsala, members of Delta Tau Delta Fraternity.

[7]Marsala advances many allegations that contradict the facts found by this Court when it ruled on summary judgment motions, post-discovery, in the 2006 litigation. After the summary

Marsala's claims.

## I.

### A.

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a party to move for dismissal of a complaint for failure to state a claim upon which relief can be granted.  Such a motion is rarely granted because it is viewed with disfavor.  See Lowrey v. Tex. A & M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997) (quoting Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982)).

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009)(citing Fed. R. Civ. P. 8). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

In considering a Rule 12(b)(6) motion, the Court "accepts 'all

---

judgment motions were resolved, it is worth reiterating that Marsala settled with Lanners, Profitable Dining, and Mayo; the claims against them were ultimately dismissed with prejudice.

[8] Marsala has voluntarily dismissed one of the other defendants, Jerry Mayo, and the other two defendants, Jerry Gabet and Jacksonville Dining Concepts, have been served but do not join in this motion.

well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  See Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464 (5th Cir. 2004) (quoting Jones v. Greninger, 188 F.3d 322, 324 (5th Cir. 1999)).  But, in deciding whether dismissal is warranted, the Court will not accept conclusory allegations in the complaint as true.  Kaiser, 677 F.2d at 1050.  Indeed, the Court must first identify allegations that are conclusory and, thus, not entitled to the assumption of truth. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). A corollary: legal conclusions "must be supported by factual allegations."  Id. at 678.  Assuming the veracity of the well-pleaded factual allegations, the Court must then determine "whether they plausibly give rise to an entitlement to relief." Id. at 679.

"'To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009)(quoting Iqbal, 556 U.S. at 678)(internal quotation marks omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citations and footnote omitted).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 ("The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 679. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> at 678 (internal quotations omitted) (citing <u>Twombly</u>, 550 U.S. at 557).

Finally, "[w]hen reviewing a motion to dismiss, a district court 'must consider the complaint in its entirety, as well as other sources ordinarily examined when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." <u>Funk v. Stryker Corp.</u>, 631 F.3d 777, 783 (5th Cir. 2011)(quoting <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322 (2007)).

*B.*

Rule 9(b) of the Federal Rules of Civil Procedure imposes a "heightened pleading standard" and provides that when alleging fraud "a party must state with particularity the circumstances constituting fraud or mistake.... Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

7

Fed. R. Civ. P. 9(b). "Rule 9(b) is an exception to Rule 8(a)'s simplified pleading that calls for a 'short and plain statement of the claim.'" <u>U.S. ex rel. Grubbs v. Kanneganti</u>, 565 F.3d 180, 185 (5th Cir. 2009). "The particularity demanded by Rule 9(b)", the Fifth Circuit instructs, "is supplemental to the Supreme Court's...interpretation of Rule 8(a) requiring 'enough facts [taken as true] to state a claim to relief that is plausible on its face.'" <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 570).

To satisfy Rule 9(b), a plaintiff must (1) specify the statements alleged to be fraudulent, (2) identify the speaker or author of the statements, (3) state when and where the statements were made, and (4) state why the statements were fraudulent. <u>Hermann Holdings Ltd. v. Lucent Technologies, Inc.</u>, 302 F.3d 552, 564-65 (5th Cir. 2002)(citations omitted). "At a minimum...a plaintiff [must] set forth the 'who, what, when, where, and how' of the alleged fraud." <u>United Sates ex rel. Thompson v. Columbia/HCA Healthcare Corp.</u>, 125 F.3d 899, 903 (5th Cir. 1997)(citation omitted). The Fifth Circuit commands that Rule 9(b) be interpreted strictly, <u>id.</u>, but instructs courts to be mindful that "Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading[;] Rule 9(b) does not 'reflect a subscription to fact pleading' and requires only 'simple, concise, and direct' allegations of the 'circumstances constituting fraud,' which after <u>Twombly</u> must make relief plausible, not merely conceivable, when taken as true."

_Kanneganti_, 565 F.3d at 185-86.   Finally, the Court must realistically observe that "Rule 9(b)'s ultimate meaning is context-specific, and thus there is no single construction of Rule 9(b) that applies in all contexts."  _Id._ at 188.

II.

_A.  Collateral Estoppel_

Gray, A&S, and SCIBMATT contend that Marsala is precluded from re-litigating issues relating to his fraud and promissory note claims because those issues were previously resolved.   The Court agrees.

The doctrine of collateral estoppel, or issue preclusion, bars "'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." _Taylor  v.  Sturgell_, 553  U.S.  880,  892 (2008)(citation  omitted).   The  Supreme  Court's  observations regarding the purpose behind applying this doctrine ring true in the context of this re-litigation:

> By "preclud[ing] parties from contesting matters that they have had a full and fair opportunity to litigate," th[is] doctrine[] protect[s] against 'the expense and vexation  attending  multiple  lawsuits,  conserv[es] judicial  resources,  and  foster[s]  reliance  on  judicial action  by  minimizing  the  possibility  of  inconsistent decisions."

_Id._ (quoting _Montana  v.  United  States_, 440  U.S.  147,  153-54 (1979)).  For issue preclusion to be appropriate, the party urging

9

its application must show:

> (1) that the issue at stake [is] identical to the one involved in the prior litigation;
> (2) that the issue has been actually litigated in the prior litigation; and
> (3) that the determination of the issue in the prior litigation has been a critical and necessary part of the judgment in that earlier action.

Rabo Agrifinance, Inc. v. Terra XXI, Ltd., 583 F.3d 348, 353 (5th Cir. 2009)(citation omitted).  Complete identity of the parties in the two lawsuits need not be present, "so long as the party against whom estoppel applies had a full and fair opportunity to litigate the issues in that earlier action."  Id.

Although it is unclear precisely which claims Marsala seeks to advance against which defendants, to the extent that Marsala seeks to re-litigate those issues decided adversely to him in this Court's November 2, 2007 Order and Reasons, he is barred from doing so.  After extensively determining the facts of the case from the summary judgment record, the Court found that Georgia law[9] barred several of Marsala's claims for fraud, including those based on alleged pre-Operating Agreement misrepresentations and the alleged failure to adequately capitalize Profitable Dining.  The Court also found that Marsala's allegations of fraud in connection with the loan of his investment in Profitable Dining to A&S failed as a matter of law because "Marsala simply does not dispute the

---

[9]The parties to the Profitable Dining Operating Agreement chose Georgia law to apply to their agreement.

defendants' contention that the loan was repaid with interest [and] Marsala fails to show how he was injured from the defendants' failure to disclose [the loan]." Likewise, the Court granted summary judgment, dismissing Marsala's claim for repayment of loans made to Profitable Dining that were secured by a promissory note.

To the extent that Marsala seeks to re-litigate issues already decided after careful consideration of the extensive facts and events in the 2006 litigation, he is barred from doing so.[10]

---

[10]There is substantial, if not complete, overlap between the allegations Marsala advanced in his 2006 lawsuit and the lawsuit he now pursues. To extract each and every issue that Marsala seeks to re-litigate is a futile enterprise at best. In fact, Marsala admits in his current complaint that, before filing this second lawsuit, he reached out to Mayo, Lanners, Gray, and Gabet to get information regarding the scope of their alleged fraud and conspiracy. He has apparently been stewing since he settled his claims against Lanners and Mayo. The defendants' observation is worth noting in this regard:

> Marsala states in the Complaint that he "has tried to avoid a second lawsuit, but the parties refuse to answer 2012 emails" or "provide Marsala with answers to a few questions." Complaint at 8. That statement puts a fine point on the impetus for the instant Action: Although his claims have been litigated fully and decided by this Court in the 2006 Action, and by this Court and the Fifth Circuit after he attempted to reopen the matter five years later, Marsala refuses to accept the judgments of the federal courts regarding the events surrounding the failure of Profitable Dining. He has continued to badger third parties for information and, when he has not received the attention or information he believes he deserves, he employs vexatious litigation against those parties.

Notably, the claims that survived summary judgment in that case were later settled by the parties.  To the extent that they are intertwined with the issues previously resolved, Marsala's fraud and promissory note claims must be dismissed.

### B.  Failure to State a Claim

Defendants also seek dismissal of Marsala's claims on the ground that he has failed to state a plausible claim for relief. The Court agrees.

### 1.  Fraud/Fraudulent Concealment

Defendants contend that Marsala has failed to plead facts with sufficient particularity to state a claim for fraudulent concealment.  The Court agrees.

Georgia law[11] defines fraudulent concealment as "[s]uppression of material fact which a party is under an obligation to communicate." Ga. Code Ann. § 23-2-53. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Id. The same five elements that must be proved for fraud must be proved for fraudulent concealment: (1) false representation by the defendant; (2) scienter; (3) intention to induce plaintiff to act or refrain from acting; (4) justifiable reliance by plaintiff; and (5) damage to plaintiff.  Hanlon v. Thornton, 462 S.E.2d 154, 156

---

[11]Marsala contends that Georgia law applies; defendants agree, but they also cite to Louisiana law, which they suggest is not materially different. The Court applies Georgia law.

(Ga. App. 1995).

The common thread between the 2006 litigation and the present is Marsala's allegation concerning the Profitable Dining "scheme," what he now calls "The Jay [Lanners] and Jerry [Mayo] Business Plan."  As he alleged in the prior lawsuit, Marsala continues to insist--notwithstanding that he settled his claims, which have been dismissed with prejudice--that he was duped by Lanners and Mayo into investing in Profitable Dining, and that they used his investment for their own purposes, including transferring or loaning the money to other companies like A&S and SCIBMATT, and that they, while concealing information, tricked him into signing personal guarantees that resulted in him losing money.  He calls the Jay and Jerry Business Plan a "Conspiracy of Securities Fraud, Larceny, Theft by Conversion, Financial Institution Fraud, and Fraudulent Transfer to Avoid Creditors, obtained by Fraudulent Concealment, and violations of Sarbanes-Oxley for failure to provide annual reports per General Accounting Principles."  As to defendants A&S, SCIBMATT, and Gray's involvement, however, the allegations are inextricably bound to his true gripe, the Profitable Dining "scheme," an issue already litigated:

> Since 2005, Marsala has attempted to obtain the information as to the transfers of his funds [that he invested in Profitable Dining].  Mayo and Lanners have fraudulently denied the transfer of Marsala's funds to any of their companies.  Gray has supported Mayo and Lanners['] efforts and Gabet claims he "[d]oes not remember....[Marsala] subpoenaed the records of SCIBMATT and A&S Recovery, but Gray refused to supply them,

> falsely writing (mail fraud 18 USC 1961-1968) to Marsala
> that there were no financial transactions between
> SCIBMATT and Profitable Dining; and SCIBMATT and A&S's
> dealings "were none of Marsala's business."...

Putting aside whether these issues have been previously litigated, Marsala fails to satisfy the heightened Rule 9(b) pleading standard applicable to fraud claims.  And putting aside the heightened pleading requirement, nowhere in his lengthy complaint does Marsala allege facts supporting the elements required to prove fraud against Gray, A&S, and SCIBMATT; he has not alleged facts concerning false representations made with an intent to deceive, let alone justifiable reliance or resulting damage.[12]

### 2.   Breach of Fiduciary Duty

Defendants next urge dismissal of Marsala's breach of fiduciary duty claim.  Marsala alleges that "Gray owed Marsala a fiduciary responsibility in 2007 to provide information to Marsala to determine what happened regarding Profitable Dining, SCIBMATT, and A&S Recovery."  This is the sort of conclusory allegation that fails to meet federal pleading standards.  Here, Marsala fails to allege the origin of any fiduciary duty owed; he does not allege that Gray, A&S, or SCIBMATT possessed any interest in Profitable

---

[12]Marsala's allegation that Gray benefitted from and facilitated Mayo's and Lanners' fraud fails to satisfy even the pleading standard announced by Rule 8, which demands more than defendant-unlawfully-harmed-me accusations.  Marsala's sarcastic observation that his "initial filling [sic] with over 500 pages of evidence and explanation, plus the above should be more than sufficient fact [sic] to establish" his claims, misses the mark.

Dining. Instead, he continues to suggest that somehow membership in a college fraternity gives rise to a fiduciary duty.[13]   However, "mere friendship and close fellowship, without more, do not create a fiduciary relationship."  <u>Smith v. Walden</u>, 549 S.E.2d 750, 757 (Ga. App. 2001).  Marsala fails to state a claim for breach of fiduciary duty.

      3.   RICO-Mail Fraud

The defendants contend that Marsala's RICO claim must be dismissed because he fails to allege facts supporting any of the elements of mail fraud.  The Court agrees.

Marsala alleges that, relative to the prior litigation, "Gray ... refused to supply the Operating Agreement of SCIBMATT" and that Gray's conduct in "falsely writing...to Marsala that there were no financial transactions between SCIBMATT and Profitable Dining" violated 18 U.S.C. §§ 1961-68 (the Racketeering Influenced and Corrupt Organizations Act).[14]   Marsala attempts to allege the most common of predicate acts, mail fraud.  "The elements of mail fraud are (1) a scheme to defraud; (2) the use of the mails to execute

---

[13]Marsala alleges that "[o]ver the years the Tulane Delts had stayed close by spending Mardi Gras together, riding on the Baccagator Float, taking adventure vacations, and spending Memorial Day weekend at Gray's beachfront condo in Pensacola.  The vacations included team building activities such as mountain climbing, white water rafting, and scuba diving."

[14]Throughout his complaint, Marsala also alleges that "Lanners referred to the group as the 'LA Mafia,' himself as 'The Dictator,' and RICO applies."

the scheme; and (3) the specific intent on the part of the defendant to defraud." <u>United States v. Smith</u>, 46 F. App'x 225, at *2 (5th Cir. 2002). Simply alleging that a defendant used the mails in connection with a fraudulent scheme is insufficient. <u>Martin v. Magee</u>, No. 10-2786, 2011 WL 5509000, at *4 (E.D. La. Nov. 3, 2011)(citation omitted). A plaintiff must allege "false pretenses, representations or promises", as well as "reliance." <u>Id.</u>

The defendants contend that Marsala fails to allege any of these elements and that the mere use of the U.S. Postal Service, not in furtherance of a fraudulent scheme but in refusing to comply with a subpoena, does not suffice to plead the predicate act of mail fraud. The Court agrees. Marsala has not pled facts to support that Gray, A&S, or SCIBMATT intended to perpetrate a scheme to defraud him.

### 4. Conspiracy

Defendants also challenge Marsala's conspiracy allegations. Marsala alleges that Gray participated in a conspiracy to commit fraud and breach fiduciary duties by "spending Memorial Day weekend with Gray and Mayo at Gray's condo in Florida, knowing that [Marsala's] assets were in the process of being converted to SCIBMATT but not telling him" and "failing to adequately capitalize Profitable Dining, causing its default," and a litany of other allegations focused on the time leading up to the formation of Profitable Dining and through the January 2004 buy-out of Marsala's

interests by Lanners.

> To recover damages based on a civil conspiracy, a plaintiff must show that two or more persons combined either to do some act which is a tort, or else to do some lawful act by methods which constitute a tort.... [T]he conspiracy of itself furnishes no cause of action. The gist of the action...is not the conspiracy alleged, but the tort committed against the plaintiff and the resulting damage.

McIntee v. Deramus, 722 S.E.2d 377, 379 (Ga. App. 2012)(quotation omitted).

The Court has already determined that Marsala has failed to allege facts sufficient to state a claim for fraud or breach of fiduciary duty; thus, his conspiracy claim likewise fails. Moreover, Marsala fails to allege facts that plausibly suggest that there was an agreement among defendants to conspire to commit a tort against him.

5.   Unjust Enrichment/Constructive Trust

The defendants also seek dismissal of Marsala's claim for unjust enrichment (to the extent he alleges one) and his "claim" for constructive trust. Marsala alleges that the funds he invested in Profitable Dining "were used for the unjust enrichment of Mayo, Lanners, and [now] Gray through their companies SCIBMATT, A&S Recovery, and Jacksonville Dining Concepts entitling him to a constructive trust." A claim for unjust enrichment under Georgia law is subject to a four-year limitations period. Evans v. Evans, 228 S.E.2d 857, 860 (Ga. 1976). The date of accrual for such a claim is the "time when the plaintiff could first have maintained

17

his action to a successful result."  Engram v. Engram, 463 S.E.2d 12, 15 (Ga. 1995)(internal quotations marks and citations omitted).

Marsala alleges that he discovered in September 2007 (during the course of discovery in the 2006 lawsuit) that "$160,000 of Marsala's investment in Profitable Dining had been transferred within hours of the investment to SCIBMATT."  He alleges that he learned that funds he invested in Profitable Dining were loaned to A&S by Lanners and Mayo.  Marsala's admits that he knew in September 2007 of the transfer of funds from Profitable Dining to A&S and/or SCIBMATT; this is when his unjust enrichment claim accrued. Thus, any claim of unjust enrichment, which prescribed in September 2011, is time-barred.

Georgia law provides that "[a] constructive trust is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity."  Ga. Code Ann. § 53-12-132. Like conspiracy, a constructive trust "is not an independent cause of action."  St. Paul Mercury Ins. Co. v. Meeks, 508 S.E.2d 646, 648 (Ga. 1998).  Instead, a constructive trust is "a remedial device created by a court of equity to prevent unjust enrichment." Jonas v. Jonas, 633 S.E.2d 544, 551 (Ga. App. 2006).

Because Marsala has not stated a plausible independent claim for relief against defendants, his constructive trust theory of

18

recovery fails.

      6. Conversion

Finally, defendants contend that, to the extent Marsala attempts to allege a claim of conversion against them, any such claim is time-barred. Like unjust enrichment, Georgia law imposes a four-year statute of limitations for claims of conversion. Ga. Code. Ann. § 9-3-32. "A right of action for wrongful conversion accrues on the date of the conversion." Rigby v. Flue-Cured Tobacco Co-Op, 755 S.E.2d 915, 924 (Ga. App. 2014). Again, Marsala admits in his complaint that he knew in September 2007 that the funds he invested in Profitable Dining were transferred to A&S or SCIBMATT.[15] At the latest, then, Marsala's claim for conversion prescribed four years later in September 2011. His claim for conversion against Gray, A&S, and SCIBMATT must therefore be dismissed.

Accordingly, the defendants' motion to dismiss is GRANTED, and the plaintiff's claims against Gray, A&S, and SCIBMATT are hereby dismissed with prejudice.

      New Orleans, Louisiana, August 11, 2014

                         MARTIN L. C. FELDMAN
               UNITED STATES DISTRICT JUDGE

---

[15]These same alleged facts are the only ones that would seem to form a basis for his conversion claim.